# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KELLI COLLIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. CIV-06-368-KEW |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner, Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Claimant, Kelli Collier, pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Claimant's application for disability benefits under the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, the Court AFFIRMS the Commissioner's decision.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment..." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

engage in any other kind of substantial gainful work in the national economy..." Id. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term substantial evidence has been interpreted by the U.S. Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not reweigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also Casias, 933 F.2d at 800-01.

**Claimant Background**

---

[1] Step one requires claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. See id. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity (RFC) to perform his past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

Claimant was born on January 29, 1969 and was 37 years old at the time of the hearing. She has an 11th grade education. Earlier is her life, Claimant worked as a cashier, warehouse worker, and motel housekeeper. Claimant alleges an inability to work beginning March 1, 2005, due to mental impairments.

## Procedural Background

On March 15, 2005, Claimant applied for benefits under Title XVI (42 U.S.C. § 1381, et seq.). Claimant's application for benefits was denied in its entirety initially and on reconsideration. A hearing before ALJ Lantz McClain was held on February 14, 2006 in McAlester, Oklahoma. By decision dated March 29, 2006, the ALJ found that Claimant was not disabled at any time through the date of the decision. On July 26, 2006, the Appeals Council denied review of the ALJ's findings. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that Claimant retained the residual functional capacity ("RFC") to perform a wide range of simple, repetitive, non-public contact work at all exertional levels. He determined Claimant's past relevant work as a warehouse worker and motel housekeeper did not require the performance of work-related activities precluded by her RFC.

## Review

Claimant asserts that the ALJ erred by: (1) ignoring vital, probative evidence from the

medical record which contradicted his findings; (2) making an RFC determination that was not supported by the evidence; and finding Claimant had past relevant work at step four.

**Consideration of Evidence**

Claimant contends the ALJ erred by failing to discuss Global Assessment of Functioning ("GAF") scores of 50 and below which were included in her medical records. Claimant argues the low GAF scores contradict the ALJ's mental RFC determination and other findings.

On June 2, 2005, Claimant was admitted to Outpatient Services with the Carl Albert Community Mental Health Services of the Oklahoma Department of Mental Health and Substance Abuse Services on a voluntary basis. Her chief complaint was with "anger problems." (Tr. 191). Historically, Claimant complained she was "lashing out with my son." Id. She was "also dealing with a lot of PTSD issues" and "was beginning to isolate herself." Id. Claimant was initially diagnosed with bipolar Disorder, Depressed 296.5; Posttraumatic Stress Disorder 309.81, secondary to sexual abuse; Hypothroid, GERD. Problem with primary support group. Current GAF 36 Highest GAF past year: not known." (Tr. 193). In summarizing his findings, Dr. Eric S. Broadway found a " Physically stable 36 year old, white female." Id. Upon her transfer for follow up with Outpatient McAlester, Dr. Broadway assessed Claimant's GAF at 50 with her highest GAF in the past year at 50. (Tr. 194).

The ALJ included a discussion of the medical records from Dr. Broadway in his decision. (Tr. 14). He relied, in part, upon these records to conclude that while Claimant did not have any physical impairments, she was limited to simple repetitive tasks which involve only incidental contact with the public. Further, the ALJ considered Social Security Ruling 85-15 for additional guidance which states: 'Where there is no exertional impairment, unskilled jobs at all

levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work. These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis.' (Tr.14).

Although the ALJ did not specifically discuss the GAF assessments in his decision, he provided a summary of the medical treatment provided during Claimant's admission to the Carl Albert Community Mental Health Services. Further, the ALJ included the medical records for follow up records with Dr. Van Tuyl and subsequent treatment at Carl Albert. (Tr. 15).

Without doubt, a low GAF is not conclusive on the issue of whether a claimant is unable to perform the necessary functions of employment. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgement of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. See, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 ( 10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. Lee, supra at 3. However, a GAF of 50 or less does suggest an inability to keep a job. Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)) Specifically, the DSM-IV-TR, explains that a GAF score between 41 and 50 indicates "[s]erious symptoms ( e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to

keep a job)." Diagnositic and Statistical Manual of Mental Disorder 34 (4th ed. 2000). A GAF of between 21 and 30 indicates "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g. sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g. stays in bed all day; no job, home or friends)."

Although a discussion of Claimant's GAF assessments would have been helpful for appellate review, the ALJ's analysis of the evidence cannot be found to be merely a cursory dismissal. The ALJ did not err by failing to include a discussion of the GAF assessments in his decision.

### RFC Determination

Claimant also contends the ALJ erred by failing to include all of her social functioning limitations in his RFC determination. Here, the RFC determination included a restriction on work involving more than "incidental contact with the public." (Tr. 19).

On May 18, 2005, a Mental Residual Functional Capacity Assessment was completed by a Disability Determination Services physician. Dr. Kampschaefer noted marked limitation in the ability to understand and remember detailed instructions and the ability to carry out detailed instructions. He also found marked limitations in the ability to interact appropriately with the general public. (Tr. 159-160). In the Functional Capacity Assessment, Dr. Kampschaefer opined "Claimant can carry out simple instructions on a routine basis. She can relate to coworkers and supervisors on a superficial basis, but should be expected to work with the general public." (Tr. 161).

On October 6, 2005, Dr. Sally Varghese also completed a Mental Residual Functional Capacity Assessment. Dr. Varghese found marked limitations in the ability to understand and

remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public. (Tr. 201-202). Dr. Varghese opined "[t]he claimant can perform simple work under direct supervision. She can relate to supervisors for work purposes, but not the general public." (Tr. 203).

As a part of her argument that the ALJ's RFC restrictions were not an accurate reflection of her limitations, Claimant references various medical records. (Tr. 142, 137, 134, 144, 196, 197, 191-95, 183, 184, 180 176-77, 175 171,229-32). Claimant also contends these records reflect Claimant's inability to perform work on a "regular and continuing basis" as defined as eight hours per day for five days each week. Social Security Ruling (SSR) 96-8p, 61 Fed. Reg. 34,474, 34,475 (1996). Further, the evidence is asserted to show that Claimant would be unable to maintain performance of this level of work for a "significant period of time." Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).

The District Court is limited to a determination of whether substantial evidence exists to support the findings of the ALJ and his application of the correct legal standards. Adams v. Chater, 93 F.3d 712, 714 (10th Cir. 1996). The ALJ's opinion contains a detailed review of the medical evidence considered. Upon careful review of the transcript of the proceedings by the court, substantial evidence supports the RFC determination made by the ALJ and the correct legal standards.

**Step Four Determination**

Claimant argues the ALJ erroneously determined she had past relevant work at step four of the sequential evaluation based on earnings levels showing that she did not engage in substantial gainful activity ("SGA") as a motel housekeeper or warehouse worker. Plaintiff contends that her income levels should have been averaged over the twelve months of the year in

which she worked prior to a determination of her monthly income.

The ALJ found "[C]laimant's work history, even prior to her alleged onset of disability, reveals primarily minimal, sporadic, and part-time work. She had no earnings at all from 1990 through 1998, only $1,227.89 in 1999, and only $548.48 in 2000." (Tr. 18).

Claimant's argument that her income should have been averaged over the twelve months of the year in which she worked before making a determination regarding her monthly income is based on 65 Fed. Reg. 82905, 82906 (2000). 20 C.F.R. § 416.974a., 65 Fed. Reg. 82905, 82906 provides for annual adjustment of the substantial gainful activity amount. However, the regulation does not mandate an average of earnings over a period of one year. Further, when read in conjunction with Social Security Ruling (SSR) 83-15 which states that "earnings are generally averaged over the actual period of time in which work was performed" SSR 83-15, this Court concludes that earnings should be averaged over the actual period of time in which work was performed. Thus, the ALJ's determination Claimant had past relevant work is supported by substantial evidence.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied, therefore the ruling of the Commissioner of Social Security Administration is AFFIRMED.

DATED this 22nd day of October, 2007.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE